IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-331-M-BM

| | |
|---|---|
| YVETTE HANDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FRANK BISIGNANO | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Yvette Handy ("Plaintiff" or, in context, "Claimant") filed this action pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a

period of disability and disability insurance benefits ("DIB"). This matter is before the court on

Plaintiff's brief [DE-10] ("Pl.'s Brief") seeking judgment in her favor, and Defendant's responsive

brief [DE-15] ("Def.'s Brief") in opposition. The time for filing responsive briefs has expired

pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this

case is ripe for adjudication. The parties have consented to entry of final judgment by a United

States magistrate judge under 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the

Fourth Circuit. Having reviewed and considered the record, the administrative transcript, the

briefs submitted by the parties, and the applicable law, the court allows Plaintiff's brief [DE-10],

denies Defendant's brief [DE-15], and remands the case to the Commissioner for further

proceedings consistent with this order.

## I.  STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on April 26,

2021, alleging disability beginning February 15, 2020. Transcript of Proceedings ("Tr.") 61, 167-

68. Her claim was denied initially. Tr. 61-66, 74-78. Plaintiff filed a request for reconsideration (Tr. 85), and was denied upon reconsideration on January 26, 2023 (Tr. 67-73, 86-93). Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 120-38. A hearing before the ALJ was held on July 5, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 34-60. On August 2, 2023, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 14-33.

On August 30, 2023, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 161-63. On April 9, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II.  STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

2

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation

3

resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 28. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since February 15, 2020, the alleged onset date. Tr. 19.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: bipolar disorder; major depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder (PTSD). Tr. 19. The ALJ also found Plaintiff had the following non-severe impairments: hypertension; knee osteoarthritis; and obesity. Tr. 20. However, at step three, the ALJ concluded these impairments both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 21-22.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding that Plaintiff had

the ability to perform a full range of work at all exertional levels[1] with the following nonexertional

limitations: "[Plaintiff] can perform simple, routine and repetitive tasks[; . . .] can sustain attention

and concentration sufficient enough to perform those tasks over the course of an 8-hour workday[;

. . .] can make simple work-related decisions[; . . . and] can have occasional interactions with

supervisors, coworkers, and the public." Tr. 23. In making this assessment, the ALJ found

Plaintiff's statements about her limitations not entirely consistent with the medical evidence and

other evidence in the record. Tr. 24.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements

of her past relevant work as a physically impaired teacher. Tr. 26. Nonetheless, at step five, upon

considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

"Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 404.1567(d).

"Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light, and sedentary work." 20 C.F.R. § 404.1567(e).

5

capable of making an adjustment to other work that exists in significant numbers in the national economy.  Tr. 27-28.

## V. DISCUSSION

Plaintiff contends that the ALJ's decision violates *Shelley C.* and *Arakas.*  Pl.'s Brief [DE-10] at 1 (citing *Shelley C. v. Comm. of Soc. Sec.*, 61 F.4th 341, 361-62 (4th Cir. 2023); *Arakas v. Comm., Soc. Sec. Admin.*, 983 F.3d 83, 97-98 (4th Cir. 2020)).  Specifically, Plaintiff argues that pursuant to "the Fourth Circuit's extension of the *Arakas* holding to [major depressive disorder ("MDD")] as announced in *Shelley C.*, 'ALJs may not rely on objective medical evidence (or the lack thereof) – even as just one of multiple factors – to discount a claimant's subjective complaints' regarding symptoms of chronic depression." *Id.* (quoting *Arakas*, 983 F.3d at 97-98).  Additionally, Plaintiff contends that "while the ALJ argued that [Plaintiff] experienced improvement in her symptoms with treatment, therefore she must not be disabled, the ALJ ignores that these periods of improvement were inevitably followed by periods of worsening symptoms." *Id.* at 8.

The Commissioner counters that "[t]he ALJ properly evaluated Plaintiff's subjective statements about her symptoms, and her decision is supported by substantial evidence."  Def.'s Brief [DE-15] at 7.  Specifically, the Commissioner argues that "the ALJ did not dismiss the Plaintiff's subjective complaints based entirely upon the belief that they were not corroborated by the medical evidence or require they be validated by objective evidence – the ALJ balanced all the relevant evidence in her analysis and ultimately found the Plaintiff's symptoms were not as disabling as she alleged." *Id.* at 8.

"A Social Security claimant's RFC represents 'the most [s]he can still do despite [her] limitations.'"  *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting 20 C.F.R. § 416.945(a)(1)).  In assessing an individual's RFC, an ALJ considers that person's

6

"ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Further, "the ALJ must consider all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at step two." *Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020) (quoting *Monroe v. Colvin*, 826 F.3d 176, 178 (4th Cir. 2016)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Monroe*, 826 F.3d at 189 (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). Indeed, "the ALJ's logical explanation is just as important as the other two [components] . . . and our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). The ALJ is not required to discuss every piece of evidence in the record. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). Yet, where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

Additionally, the Fourth Circuit held in *Shelley C*, 61 F.4th 341, that similar to the evaluation of fibromyalgia, "ALJs could not rely upon the absence of objective medical evidence to discredit 'a claimant's subjective complaints regarding symptoms of MDD.'" *Shelley C.*, 61 F.4th at 361 (quoting *Arakas*, 983 F.3d at 97). The Fourth Circuit went on to note that "because of the unique and subjective nature of MDD, subjective statements from claimants 'should be treated as evidence *substantiating* the claimant's impairment.'" *Id.* at 361-62. The court in *Shelley C.*

7

also emphasized that intermittent findings of improvement did not preclude a finding of MDD due to the nature of the illness. *Id.* at 357 ("The fact is 'people with chronic diseases can experience good and bad days' even 'under continuous treatment for it with heavy drugs.'") (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019)).

Here, the ALJ summarizes Plaintiff's testimony that:

> she was unable to work due to developing bipolar disorder, PTSD, anxiety disorder and insomnia[,] . . . she does not like being around people because she feels like they are watching her[, and] . . . she goes grocery shopping early in the morning or late because she does not like crowds.

Tr. 23.

The ALJ also acknowledges allegations from Plaintiff's function report that she has "difficulty . . . getting along with others." *Id.* When considering Plaintiff's ability to interact with others, the ALJ found that Plaintiff had a moderate limitation in this area. Tr. 21. Specifically, the ALJ noted Plaintiff's alleged "difficulty engaging in social activities, getting along with others, and spending time in crowds" as well as her reports of "irritability, anger issues, and isolating herself." *Id.* The ALJ acknowledged that "[i]n March 2023, [Plaintiff] reported 'thoughts of wanting to fight people who stand in her way.'" *Id.* The ALJ juxtaposes these findings with reports that Plaintiff was "often noted to engage appropriately with her therapist[,] . . . was also noted to be doing well on medication, with improvement in her mood [and] also reported participating in gym activities, going to the library, and opening up to people." *Id.* Elsewhere, the ALJ claims that "[t]he record demonstrates that her symptoms continue to improve throughout her treatment." Tr. 25.

The ALJ does not sufficiently explain how the deterioration of Plaintiff's condition in 2023 reconciles with her findings that Plaintiff's "symptoms continue to improve" and that "[Plaintiff's]

symptoms have responded to treatment." *Id.*

To be clear, the ALJ acknowledges that "[m]ore recent records from January, March, and April 2023 note that [Plaintiff] reports irritable mood, highly agitated, using profanity, not socializing, up and down moods, crying spells, and nightmares." Tr. 25. The ALJ highlighted that:

> in March 2023, [Plaintiff] presented with an irritable demeanor[, . . .] stated that she stopped going to the gym[, . . .] stated feeling irritated with every little thing with thoughts of wanting to fight people who stand in her way[, . . .] reported that this was a 'mild irritation with people' and she isolates until she feels stable.

*Id.*

The ALJ appears to attempt to temper these findings by noting that "[b]y May 2023, [Plaintiff] reported periods of stable mood, although she endorsed seeing shadows and 'people believing they are from her ancestral line.'" *Id.* The ALJ summarizes Plaintiff's condition by noting that:

> [t]he record shows [Plaintiff's] symptoms have responded to treatment, and her symptoms have been managed to a degree that would permit her to perform simple routine and repetitive work, and make simple work-related decisions[,] . . . while [Plaintiff] has reported irritability and anger issues, those difficulties would be adequately accommodated by limiting her to occasional interactions with supervisors, coworkers and the public.

*Id.*

Here, the court does not find that the ALJ committed the error from *Shelley C.* of relying "upon the absence of objective medical evidence to discredit 'a claimant's subjective complaints regarding symptoms of [her MDD]." *Shelley C.*, 61 F.4th at 361. Indeed, the ALJ counters the alleged severity of Plaintiff's symptoms in large part by citing Plaintiff's own testimony and Plaintiff's reports to medical providers, as discussed above.

Yet in *Shelley C.*, the Fourth Circuit also indicated that chronic depression, like fibromyalgia, could be characterized by a "waxing and waning" of symptoms, and that ALJs can

9

commit error when they mischaracterize such trends. *See* 61 F.4th at 363. There is evidence in the record that could be suggestive of such waxing and waning. For example, medical records from May 2023 document that Plaintiff "reports periods of stable mood[,] but [w]hen mood is not stable, report irritability or agitation and sometimes argumentative." *See* Tr. 546; *see also* Tr. 527 (medical notes from April 2023 noting "Mood is 'up and down'. Periods of crying spells. Reports mild irritation with people and isolating until she feels stable."). While the ALJ notes a report by Plaintiff that despite her mood being "up and down," she was "stable enough," (Tr.25), other reports of Plaintiff's mood fluctuations include no qualifications tempering them. *See* Tr. 329 (psychiatric notes from February 2020 reporting "Patient has struggled with her mood as it fluctuates 'up and down'").

Similarly, while the ALJ acknowledges that Plaintiff participated in gym activities (Tr. 21-22), but then "stopped going to the gym" (Tr. 25), she does not explore whether these trends evidence the waxing and waning nature of Plaintiff's MDD symptoms or should be interpreted otherwise. The failure to discuss the possible waxing and waning of MDD symptoms is particularly concerning, because some of the most recent medical records appear to show an intensification of Plaintiff's symptoms (Tr. 527, 531, 535, 546), undermining a narrative of a trajectory of improvement.

Because it is unclear whether the ALJ considered the waxing and waning nature of MDD in Plaintiff's case, the court is "left to guess about how the ALJ arrived at [her] conclusions," *Mascio*, 780 F.3d at 637. Specifically, the court cannot determine whether the ALJ's finding that Plaintiff's "irritability and anger issues . . . would be adequately accommodated by limiting her to occasional interactions with supervisors, coworkers and the public" (Tr. 25) is supported by substantial evidence based on this omission. Plaintiff claimed that during periods of deterioration,

10

she isolates until she feels stable.  Tr. 25.  It is unclear whether she would be able to employ this coping mechanism in the context of the current RFC, and the ALJ does not meaningfully explain why such a coping mechanism would not be needed during periods of deterioration.

Similarly, while the ALJ finds that Plaintiff's "irritability and anger issues . . . would be adequately accommodated by limiting her to occasional interactions with supervisors, coworkers and the public," she does not explain, which limitations, if any, are intended to mitigate Plaintiff's recent hallucination symptoms, or why such limitations are not necessary.  This omission also frustrates meaningful review by the court.

To be clear, the court expresses no opinion as to whether Plaintiff does or does not require additional limitations based on her MDD.  The court only seeks to ensure that the ALJ properly considers the relevant evidence and fully explains her decisions, so as to permit meaningful review by the court, if necessary.  On remand, the ALJ should discuss the record evidence regarding the waxing and waning nature of Plaintiff's symptoms in the context of her MDD.  The ALJ should make findings and provide sufficient explanation in order to permit meaningful judicial review for substantial evidence, if necessary.

## VI.  CONCLUSION

For the reasons stated above, the court allows Plaintiff's brief [DE-10], denies Defendant's brief [DE-15], and REMANDS this matter to the Commissioner for further proceedings consistent with this order.

SO ORDERED, this 25th day of September, 2025.

_____
Brian S. Meyers
United States Magistrate Judge

11